```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                      EASTERN DIVISION
```

Bernadine Kennedy Kent,         :

      Plaintiff,             :

  v.                              :           Case No. 2:13-cv-459

Detective Joshua Gantt,             Magistrate Judge Kemp

      Defendant.             :


                        OPINION AND ORDER

     This case, referred to the Magistrate Judge with the consent of the parties, is before the Court on defendant's motions to dismiss and for sanctions (Doc. 4 and 7).  Both motions are fully briefed.  For the following reasons, the Court will grant the motion to dismiss, dismiss all federal law claims with prejudice, dismiss all state law claims without prejudice, and deny the motion for sanctions.

                                         I.

     The First Amendment to the United States Constitution is the protector of many important social and political values.  Among these are a prohibition on laws "abridging the freedom of speech" and a recognition of "the right of the people ... to petition the Government for a redress of grievances."  This case raises a question about what activities are included in those First Amendment freedoms, and whether certain types of government action (or inaction) infringe them.

     Based on the complaint and its attachments, as well as other materials submitted on her behalf, it appears that plaintiff Bernadine Kennedy Kent is a concerned citizen who does not hesitate to express her concerns to government officials.  That can be a hallmark of good citizenship, and is fully consistent with the First Amendment.  She says, though, that what happened

in this case is not.

A fair reading of the complaint reveals these facts. At some point, perhaps in 2012, Ms. Kent became concerned about the welfare of some children she knows and occasionally cares for. In particular, she was concerned that an older brother of three younger sisters may have been abusing them sexually, and that the children's mother was aware of his actions but failed to report them. Ms. Kent also believed that the mother's husband was abusive and dangerous and that the mother herself had issues concerning drug use, potential homelessness, and neglect of the children.

After having additional contact with the children in February, 2013, Ms. Kent called the police. She reported her concerns to Detective Joshua Gantt, the named defendant, explaining that the family in question had a history with Franklin County Children's Services and that, in her view, FCCS improperly returned the children to the family in 2012 and closed its case. Later, she filed a written complaint against the children's mother alleging child abuse.

It also appears that Ms. Kent or her husband, James Whitaker, or both of them, obtained temporary custody of at least one of the children in 2013 based on these same concerns. In an email dated March 19, 2013, Detective Gantt congratulated Ms. Kent on getting the children into a safe situation (Complaint, Exhibit I). He said in the same email that he would "file the charges" if "possible/necessary."

Apparently, however, he did not, and that is what Ms. Kent is complaining about. In fact, she alleges that Detective Gantt never created an official record or incident report. Her complaint characterizes this failure as a violation of her "right to free expression" (Complaint, First Claim) and her right "to redress of grievances" (Second Claim). The Third Claim is based

on the alleged deprivation of property without due process of law.  The remainder of the claims in the complaint rely on Ohio law for their support.

## II.

It is not necessary to set out in great detail the familiar standard for evaluating a motion to dismiss.  A motion to dismiss under Fed. R. Civ. P 12(b)(6) should not be granted if the complaint contains "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 569 (2007).  All well-pleaded factual allegations must be taken as true and be construed most favorably toward the non-movant. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009).  Rule 8(a) admonishes the Court to look only for a "short and plain statement of the claim," however, rather than requiring the pleading of specific facts.  Erickson v. Pardus, 551 U.S. 89 (2007).  The Court will evaluate Ms. Kent's complaint under this standard.

## III.

Ms. Kent's three federal claims are asserted under 42 U.S.C. §1983, which provides a remedy in favor of any person who is "subjected ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by a person acting under color of state law.  Ms. Kent has adequately alleged that Detective Gantt is a person who acted under color of state law.  What the Court must decide is if he deprived Ms. Kent of any right secured to her by the Constitution - particularly, as she claims, by the First and Fourteenth Amendments.  While the motion to dismiss also raises an issue of qualified immunity - briefly described as a defense available to a state official who violates the Constitution but could not reasonably have been aware that he or she did so, see, e.g., Harlow v. Fitzgerald, 457 U.S. 800 (1982) - the Court need not reach that question if it

-3-

finds that no constitutional violation has been alleged.  See Estate of Owensby v. City of Cincinnati, 414 F.3d 596, 602 (6th Cir. 2005)("If the facts alleged fail to establish a constitutional violation, then the inquiry ends").

### A. The First Amendment Claims

The Court begins its analysis with a fairly straightforward proposition: "Nothing in the First Amendment or in [the Supreme] Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues." Minnesota State Board for Community Colleges v. Knight, 465 U.S. 271, 272 (1984).  This Court has applied that principle to a case where a citizen, dissatisfied with the fact that his many petitions for redress were ignored by federal officials including the President and the Attorney General, sued them claiming a violation of his First Amendment rights.  In that case, the Court, relying on Knight and decisions such as Smith v. Arkansas State Highway Employees, Local 1315, 441 U.S. 463 (1979) and Apple v. Glenn, 183 F.3d 477, 479 (6th Cir. 1999), concluded that "[t]he right to petition is the freedom to express one's will to the government, and [plaintiff] has been able to do just that.  It is not a right that requires the government to reciprocate." Brown v. Obama, 2012 WL 2562352, *2 (S.D. Ohio June 29, 2012)(Kemp, M.J.), adopted and affirmed 2012 WL 3064256 (S.D. Ohio July 27, 2012).

Other Judges of this Court have dealt with similar issues in similar fashion.  For example, in Lawton v. Perry Twp. Police Department, Case No. 2:06-cv-646 (S.D. Ohio), the plaintiff complained that the Perry Township Police Department failed to investigate his claims that crimes had occurred.  In his opinion dismissing the case (Doc. 7), Judge Marbley held that

-4-

> There is no constitutionally protected right to have one's claim against another person investigated. *See DeShaney v. Winnnebago County Dep't of Social Services*, 489 U.S. 189, 195 (1989). "No federal appellate court, including the Supreme Court . . . has recognized that there is a federally enforceable right for the victim [of a crime] to have criminal charges investigated at all." *White v. City of Toledo*, 217 F.Supp. 2d 838, 841-42 (N.D.Ohio 2002). *See also Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)(there is no federally protected right to compel the arrest of another).

*Slip Op.*, March 8, 2007, at 2.

It would be surprising indeed if a police department which is not required by law to investigate or to file charges (or to take any action at all) against someone accused of a crime, or to report back to the person who made the complaint, is nonetheless constitutionally required to prepare and place in its own records written documentation that a citizen has reported a crime. There is not much case law addressing this precise issue, perhaps because few citizens (or their attorneys) have ever concluded that the Constitution requires police officers to make such reports.

Detective Gantt has cited, and the Court's independent research has located, only a single case which appears to be directly on point. In that case, <u>Abella v. Simon</u>, 831 F.Supp.2d 1316 (S.D. Fla. 2011), <u>vacated in part</u> 482 Fed. Appx. 522 (11th Cir. July 26, 2012), the court held that the Constitution is not violated by a police officer's failure to make a report. It reasoned that because other courts have held that the making of a false report is not a constitutional violation, the failure to make any report at all cannot be one either. <u>Id</u>. at 1341-42, <u>citing Jarrett v. Twp. of Bensalem</u>, 312 Fed. Appx. 505, 507 (3d Cir. 2009) and <u>Landrigan v. City of Warwick</u>, 628 F.2d 736, 745 (1st Cir. 1980).

<u>Landrigan</u> was a case in which the plaintiff complained about

-5-

a false police report having been made and placed in the police department files.  That court concluded that unless the report were actually used in a way which damaged the plaintiff, there was no constitutional violation; "we do not see how the existence of a false police report, sitting in a drawer in a police station, by itself deprives a person of a right secured by the Constitution and law."  Id. at 744.  Jarrett reached a similar conclusion, relying not only on Landrigan but also on cases such as Shock v. Tester, 405 F.2d 852 (8th Cir. 1969), which found no right under the Equal Protection Clause to an accurate police report, or to have an inaccurate report corrected.

The interests implicated by the creation of inaccurate police reports, and by the absence of any police report, are not identical.  The first involves government action, rather than inaction, and would seem to present a stronger case for a constitutional violation; perhaps that is why the courts which have addressed that issue have suggested that if the false report is used in a way which damages the plaintiff, some type of constitutional claim might be available.  The second involves government inaction, which, unless it results in harm as a result of the aggravation of a situation the government itself has created, see, e.g., DeShaney, supra, usually does not violate the Constitution even if it actually causes harm.  Thus, the Abella court's reliance on cases involving inaccurate police reports is reasonable even if the situations differ, and this Court finds its reasoning persuasive.

Further, Ms. Kent has not alleged that she suffered any harm as a result of the absence of the police report in question; she was not the victim of the conduct she reported.  Neither has she claimed that as a result of Detective Gantt's failure to make an official report, she has been victimized subsequently.  While there is a substantial question about whether she could make out

a constitutional claim even if she suffered harm, see, e.g., DeShaney, supra; see also Town of Castle Rock, Colo. v. Gonzales, 545 U.S. 748 (2005), that is not this case.  The long and short of the matter is that Detective Gantt's failure to make an official report had no impact on Ms. Kent's ability to express her concerns to the police or to ask the police to act; she did both.  And she has not explained in any plausible way how his failure to make the report inhibited her subsequent ability to do exactly the same thing.  Her rights of expression and to petition for redress were simply unaffected by his inaction, and that is enough to defeat her First Amendment claims.

Ms. Kent argues that state law imposed a duty on Officer Gantt to make a report of her complaints.  See O.R.C. §5502.62(C)(6).  That statute provides:

> (C) The division of criminal justice services shall develop and maintain the Ohio incident-based reporting system to facilitate the sharing of information with the federal bureau of investigation and participating law enforcement agencies in Ohio. The Ohio incident-based reporting system shall be known as OIBRS. In connection with OIBRS, the division shall do all of the following:
>
> ***
>
> (6) Require every law enforcement agency that receives federal criminal justice grants or state criminal justice information system general revenue funds through the division to participate in OIBRS or in the uniform crime reporting program of the federal bureau of investigation. An agency that submits OIBRS data to the Ohio local law enforcement information sharing network shall be considered to be in compliance with division (C)(6) of this section if both of the following apply:
>
> (a) The Ohio local law enforcement information sharing network is capable of collecting OIBRS data.

>   (b) The division of criminal justice services has the ability to extract the OIBRS data for reporting to the national incident-based reporting system in the manner required by the federal bureau of investigation.

According to Ms. Kent, pursuant to this statute, the Office of Criminal Justice Service requires all agencies receiving federal grants to report crime statistics.  She reasons that such statistics cannot be accurately reported if officers fail to enter reports of crimes into the official records, so that officers therefore have a duty to make such reports each time a citizen complains of a crime.

The Court expresses no view on whether Ohio law imposes such a requirement, although it notes that Detective Gantt has submitted an unreported state court decision which says it does not.  For First Amendment purposes, it does not matter what Ohio law requires or does not require; the source of First Amendment rights is federal, not state, law.  There simply is no federal constitutional duty imposed on law enforcement agencies to record every citizen's complaint in writing because there is no corresponding First Amendment right granted to citizens to have their complaints entered into the official written record of a police department.

B.  <u>The Due Process Claim</u>

Ms. Kent's only other federally-based claim is her Due Process claim.  As the Court understands this claim, it is based on the fact that Ms. Kent turned over some items of physical evidence to Detective Gantt (particularly an audio recording) but that he then failed to use that evidence to record her complaint.  Because he did not grant her a "hearing" before he made that decision, she claims to have been deprived of her property without due process.

This claim borders on the frivolous.  Ms. Kent does not

claim that she was forced to give the audio recording or any other item of personal property to Detective Gantt.  She turned her property over willingly.  That act cannot form the basis for a claim that Detective Gantt illegally seized her property.  See, e.g., Waters v. Howard Sommers Towing, Inc., 2011 WL 2601835, *8 (C.D. Cal. June 30, 2011) ("when an individual consents to relinquish his person or property, there is no Fourth Amendment 'seizure.'"), citing United States v. Mendehall, 446 U.S. 544 (1980).

It is an open question in this Circuit whether the failure to return property voluntarily given to a state official is a Fourth Amendment seizure.  See Fox v. Van Oosterum, 176 F.3d 342 (6th Cir. 1999).  However, Fox held that if the government obtains property lawfully (but in a manner other than receiving it through the voluntary act of the owner), the continued retention of that property against the owner's wishes is not a Fourth Amendment seizure and is better analyzed under the Due Process Clause.  Here, any claim for return of the actual audio recording is barred by Parratt v. Taylor, 451 U.S. 527 (1981), which held that no due process claim can be asserted for a state official's deprivation or retention of property if the state also provides an adequate post-deprivation remedy.  That is, so long as the deprivation did not occur due to some pre-established state policy which requires or permits citizens to be deprived of their property without a hearing ahead of time, "the deprivation, though under color of state law, is not without due process of law."  Wilson v. Beebe, 770 F.2d 578 (6th Cir. 1985).  Ms. Kent has not argued that she lacks a state remedy, in tort or otherwise, to obtain the audio recording back or to be compensated for its value.  In fact, she has not alleged that she ever asked for it back.  Thus, there is no plausible basis for any claim that Detective Gantt retained the items she gave him,

against her will, without providing her with an opportunity to be heard concerning the retention.

Detective Gantt's retention of her audio recording does not seem to be the gist of Ms. Kent's claim, however.  Rather, she seems to assert that she had a property interest in having her property put to use in making an official record of her complaint, and that Detective Gantt deprived her of that property interest.  See Plaintiff's Response to Defendant's Motion to Dismiss, Doc. 6, at 4 ("When Defendant GANTT received the Plaintiff's property and did not follow the Columbus Police Division Directive for 'Property and Evidence Handling' Defendant GANTT essentially took away the benefit of the Plaintiff's property submitted for its evidentiary value to establish that a crime had been committed and linking the alleged crime to its alleged perpetrators").  She cites to various Columbus Police Division Directives relating to receiving and handling property as the basis for her assertion that Detective Gantt had a duty to use the property for purposes of creating an official record of her complaint.

It is true that state law can create property interests that are then protected by the Fourteenth Amendment.  See Paul v. Davis, 424 U.S. 693, 710-11 (1976)(some property "interests attain ... constitutional status by virtue of the fact that they have been initially recognized and protected by state law ... and we have repeatedly ruled that the procedural guarantees of the Fourteenth Amendment apply whenever the State seeks to remove or significantly alter that protected status").  However, citizens generally have no property interest simply in seeing that state procedures are followed. See Richardson v. Township of Brady, 218 F.3d 508 (6th Cir. 2000)(a plaintiff who asserted a property interest in having a township follow its own mandatory procedure for amending a livestock ordinance "can have no protected

-10-

property interest in the procedure itself"); see also Shanks v. Dressel, 540 F.3d 1082, 1092 (9th Cir. 2008)("Absent a substantive property interest in the outcome of procedure, [a plaintiff] is not constitutionally entitled to insist on compliance with the procedure itself"). Thus, no matter what the Columbus Police Division procedures require, Ms. Kent cannot assert a valid property interest in having them followed.

It could be that Ms. Kent is claiming not just an interest in having the Columbus Police Department follow its own policies however, but some further substantive interest in the result which would occur if those policies were followed, such as the arrest of the alleged criminals. Even if a state statute or regulation appears to confer some type of benefit on its citizens, and even if the failure to follow the statute or regulation actually deprives the citizen of that benefit, the Due Process Clause is not implicated if the benefit is properly described as "indirect" or "incidental." So, for example, in Town of Castle Rock, supra, the Supreme Court held that a beneficiary of a restraining order issued against her spouse "did not, for purposes of the Due Process Clause, have a property interest in police enforcement of the restraining order against her husband." Id. at 768. That was so even if the police were mandated by state law to enforce the order, because the benefit to the protected spouse (whose three children were killed by her husband when state officials failed to enforce the restraining order) was considered indirect. As the Supreme Court said, "the alleged property interest here arises *incidentally*, not out of some new species of government benefit or service, but out of a function that government actors have always performed - to wit, arresting people who they have probable cause to believe have committed a criminal offense." Id. at 767-68.

Surely, any interest Ms. Kent had in having Detective Gantt

-11-

use her "property" to make a report of a crime is at least as indirect as the interest a battered spouse has in having the police enforce a restraining order. Ms. Kent is not even the victim of the alleged crime. Under Castle Rock and the decisions it relied upon, including O'Bannon v. Town Court Nursing Center, 447 U.S. 773 (1980), even if the Court were to assume that Detective Gantt had the duty which Ms. Kent alleges (and which is not at all clear from the various sources of state law she cites), his failure to discharge that duty is not a Due Process violation. This claim also fails.

IV.

The Court has supplemental, but discretionary, jurisdiction over Ms. Kent's state law claims. As this Court has said, however, in most cases where both federal and state claims have been asserted, "after the federal claims have been dismissed, pendent state law claims should also normally be dismissed." Clellan v. Karnes, 2011 WL 3627399, *5 (S.D. Ohio Aug. 17, 2011); see also 28 U.S.C. §1367(c). There is no reason to deviate from that practice here. The Court will dismiss all of the state law claims without prejudice.

V.

Detective Gantt has also moved for sanctions against both Ms. Kent and her attorney for the way in which he was served with process. The Court certainly does not approve of the type of subterfuge used in this case, especially when there would appear to have been no reason not to obtain either a waiver of service or service by much more straightforward means. Nevertheless, there is absolutely no evidence that either Ms. Kent or her attorney directed service to made in this way or had any advance knowledge that it would occur. Detective Gantt's attorney, at the initial pretrial conference, stated that he was not asking for an evidentiary hearing on the motion. Without evidence that

either Ms. Kent or her attorney had the slightest idea that service would occur inappropriately here, the Court does not believe that sanctioning either of them would be proper.  The motion for sanctions cites to no authority where a Court has imposed sanctions under such circumstances.  The motion for sanctions will be denied for these reasons.

### VI.

Based on this Opinion and Order, the Court grants the motion to dismiss (Doc. 4) and denies the motion for sanctions (Doc. 7).  Claims One, Two and Three of the complaint, arising under the First Amendment and the Due Process Clause, are dismissed with prejudice.  The remaining claims, all arising under state law, are dismissed without prejudice.  The Clerk is directed to enter a judgment in favor of the defendant and to terminate this case.

/s/ Terence P. Kemp
United States Magistrate Judge